THE HONORABLE FRED Van SICKLE

Darrell L. Cochran
Thaddeus P. Martin
Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP
1201 Pacific Avenue, Suite 2100
Post Office Box 1157
Tacoma WA 98401-1157

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

| | |
|---|---|
| SHARALLE ARNOLD, et al, | NO. CS-03-0335-FVS |
| Plaintiffs, | PLAINTIFFS' JOINT REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE AND PLAINTIFFS' CROSS-MOTION FOR CLASS CERTIFICATION |
| v. | |
| CITY OF PULLMAN POLICE DEPARTMENT, et al., | HEARING DATE: February 28, 2005 |
| Defendants. | |

| | |
|---|---|
| NICOLE LOGAN, | CS-04-214-FVS |
| Plaintiff, | |
| v. | |
| CITY OF PULLMAN POLICE DEPARTMENT, et al., | |
| Defendants. | |

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 1 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

# I.   INTRODUCTION

There is one question presented by these motions and counter-motions: How best can the legal system handle the problem created when Pullman Police Department officers illegally gassed with toxic chemicals 300–600 people, almost all of whom were African-American? This is a problem caused by the Pullman Police Department, but it must be solved by the legal system.

There are multiple solutions envisioned by federal courts when a tortfeasor, even a constitutional tortfeasor, has injured hundreds of innocent victims: 1) a class action; 2) multiple lawsuits by groups of plaintiffs; and, the least desirable of all, 3) multiple disparate trials, such as having 300 separate suits filed and proceeding along towards individual trials or even the "trifurcation" proposed by defendants.[1]

It is important to revisit what gave rise to these legal claims.   On September 8, 2002, several Pullman Police officers jumped out of an unmarked police car and without warning gassed, with toxic chemicals, an entire building full of people who were participating in an African-American fraternity

---

[1] Plaintiffs are continually amazed by defendants' desire to choose complicated and expensive means to litigate this case, rather than adopting an ethic that includes efficiency and purpose.

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 2 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

fundraiser. The Pullman Police Department knew that hundreds of people were in the building when the officers covertly attacked the attendees; in fact, their supervising sergeant had walked through multiple floors of the building just two hours before the gassing. Pullman Police have estimated that the officers gassed between 300 and 600 people, most of them African-Americans. The Pullman Police caused significant harm to these people. The injured people have a right to redress, and this right includes 1) attempting to stop the Pullman Police Department from indiscriminately gassing innocent people who gather for an African-American event; 2) attempting to stop Pullman Police officers from carrying out their racial animus on innocent people; 3) attempting to stop the Pullman Police Department from negligent and other legally improper behavior; and 4) obtaining compensation.

The legal system now has to deal with the fact that the Pullman Police Department has violated the law and harmed hundreds of people. Defendants' attorneys have a bad habit of forgetting that the Pullman Police Department caused this problem, not the plaintiffs. Despite the shortcomings of analysis by defense counsel, the question is how best to handle the fact that the Pullman Police Department illegally gassed 300–600 people?

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiffs respectfully submit that the best method is to consolidate this matter into a single trial, and plaintiffs have moved for this relief under FRCP 42(a). Considering defendants' odd cross-motion to "trifurcate" and bifurcate, Plaintiffs now respectfully request, in the alternative, that this Court consider certifying this case as a class action.

Defendants inflicted injury upon plaintiffs within a limited timeframe, while plaintiffs were on the premises known as the Top of China. There is no reason for this Court to conduct between 3–7 separate trials[2] to find out the extent of defendants' bad behavior on the night in question. Other federal courts have agreed:

> The *incident alleged by the plaintiffs occurred within a limited space and time frame*; it is precisely one sort of situation contemplated by Rule 42(a). **The court should not be required to conduct three trials in order to ascertain what happened within that limited space and time.**

---

[2] Defendants appear to call for three trials for findings of fact, two of which are on liability, one of which would be on damages, but then defendants go on to place plaintiffs in three–five separate categories of damages. Given the lack of clarity in defendants' briefing it is unclear as to what defendants are really requesting, let alone what they actually want.

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 4 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

*Vaccaro v. Moore-McCormack Lines, Inc.*, 64 F.R.D. 395, 397 (S.D.N.Y. 1974) (emphasis added).

## II.    REBUTTAL ARGUMENT

### A.    This Court Should Consolidate All of the Claims That Arise Out of Defendants' Unconstitutional Malfeasance.

Plaintiffs respectfully request that this Court, pursuant to FRCP 42, consolidate for trial the concurrent matters of *Nicole Logan v. City of Pullman, et al.*, CV-04-214-FVS[3] and *Sharalle Arnold, et al. v. City of Pullman, et al.*, CS-03-0335-FVS. These matters involve identical issues of law and common issues of fact, and these matters should be consolidated for the sake of judicial economy and an efficient trial, as well as to conserve the resources of the litigants.

The *Arnold* Plaintiffs, Nicole Logan, and the intervenor *Logan* plaintiffs have filed separate but essentially identical lawsuits that allege the same series of legal theories causes of action. Contrary to defendants' apoplectic briefing, these actions are substantially identical in substance, both in law and fact.

---

[3] There is a pending motion to amend the *Logan* complaint to add parties and conform the pleadings to those of the *Arnold* matter, but until this Court rules on the motion, plaintiffs will refer to the *Logan* matter under its original case caption.

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 5 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

Obviously, the same evidence will apply to all claims that arose from defendants' unconstitutional malfeasance.

All of the plaintiffs' claims arise from the same event: the brutal chemical attack, perpetrated by defendants under color of law and motivated by racial animus. Each plaintiff has advanced identical legal theories against defendants. Each plaintiff intends to prove at trial substantially the same fact pattern as to defendants' actions. The only way that these claims could be more similar is if they were all brought by the same person.

This Court should consolidate these cases under the same cause number, in the interest of procedural fairness, judicial economy, and administrative simplicity. Contrary to defendants' misstatements of law, consolidation is proper when there is merely a *single* common issue of law, **or** a *single* common issue of fact. FED. R. CIV. P. 42(a).[4]

Plaintiffs invite this Court to examine the allegations of defendants' tortious acts. They are the same. The evidence in each plaintiff's liability claim

---

[4] Although defendants have admitted as much in the Second Circuit case law that they have excerpted, defendants incorrectly imply that this Court has no discretion to consolidate because no findings of facts have been made. *See* Defendants' Response and Cross-Motion at 3–4 (citing, *inter alia*, *In RE Repetitive Stress Litigation*, 11 F.3d 368, 374, (2nd Cir. 1993)).

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 6 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

1

2

3

4

5

is the same. Defendants imply that there must be some sort of finding of fact prior to consolidation,[5] but this unsupported proposition does not merit a response by plaintiffs or consideration by this Court. Rather, Defendants' arguments are contrary to the rules:

6

7

8

9

10

> When actions involving a **common question of law _or_ fact** are pending before the court, **it may order a joint hearing or trial** of any or all the matters in issue in the actions; **it may order all the actions consolidated**; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

11

FED. R. CIV. P. 42(a).

12

13

14

15

16

17

18

19

20

Defendants' lengthy briefing demonstrates the merit of plaintiffs' suggestions. The civil rules do not support defendants, so they ignore them. The law does not support defendants, so they attempt to introduce experimental psychological research. Ultimately, this Court should follow the law and make its decision about how best to administer justice and how to try these claims. Plaintiffs merely offer two suggestions: consolidate these cases for trial or consider class certification.

21

22

23

24

25

26

---

[5] *See* Defendants' Response and Cross-Motion at 4:2–4.

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 7 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

Defendants argue that a mere difference in the timing of discovery between *Arnold* and *Logan* precludes consolidation. It does not. Federal courts hold that the possibility that the cases may be at different stages is not fatal to a motion for consolidation. *See Internet Law Library, Inc. v. Southridge Capital Management*, 208 F.R.D. 59, 62 (D.C.N.Y. 2002) (holding that timing discovery should not preclude consolidation, since much of the discovery in consolable cases will be applicable to the other); *see also Fields v. Provident Life & Acc. Ins. Co.*, 2001 WL 818353 (D.C. Pa. 2001) (holding that consolidation was proper where, even though only one case was ready for trial, the court believed that the goal of efficiency remained achievable).[6]

The *Logan* and *Arnold* matters involve identical issues of law and nearly identical issues of fact. Plaintiffs in these actions are asserting the same damages against the same defendants, and all plaintiffs are requesting the same relief under the same legal theories. Discovery obtained in one matter will overlap and supplement discovery in the other. Both matters have been assigned to the Honorable Fred Van Sickle. There is no reason to try these cases separately in

---

[6] In fact, federal courts have properly consolidated cases, on the day before trial. *See Kershaw v. Sterling Drug, Inc.*, 415 F.2d 1009, 1012 (5th Cir. 1969).

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 8 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

identical trials before the same judge. For the sake of the Court, as well as the litigants, the matters should be consolidated.[7]

**B.    The Evidence in a Separate Trial on Liability, in This Case, Would Be Highly Duplicative of the Evidence Required in a Trial on Damages.**

Defendants' arguments that separate trials are warranted because there would be no duplicative evidence strains all credibility. In a case on damages, the *same* evidence will be introduced and argued over. Why defense lawyers would want to duplicate its work, costing defendants double, triple, or quadruple the amount of attorneys' fees defies common sense, to say nothing of the ethical implications.[8]

In this case, substantial amounts of evidence in a segregated liability case will be necessarily identical to that in a segregated damages cases. The same questions will need to be answered by evidence: 1) where were the officers throughout the evening; 2) what did each officer claim to see; 3) with what degree of racial animus was each officer motivated; 4) what amount of chemical munitions were used by each officer; 5) to what extent did each officer take

_____

[7] It is entirely proper for these parties to be joined in this action. *See* FED. R. CIV. P. 20(a).

[8] *See, e.g.*, R.P.C. 1.5(a).

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 9 of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

affirmative steps to worsen the effects of the chemical attack with respect to the plaintiffs; 6) what chemicals, or series of chemicals, did each individual officer use in the building; 7) when did each individual officer use each chemical, or series of chemicals; 8) which individual officers attacked students on the second floor of the Top of China; 9) which individual officers prevented egress from the Top of China; and 10) which individual officers placed chemical devices on the second floor of the Top of China?

### C.   Defendants' Gratuitous and Contradictory Arguments About the Merits of Plaintiffs' Claims Are Inappropriate on a Motion to Consolidate and Should Be Stricken.

On one hand, defendants appear to be arguing that multiple trials should ensue because defendants argue that no constitutional violations occurred. However, defendants then indicate that "Thus, here again, it is very likely that a jury would find that the Plaintiffs' constitutional rights were violated." Defendants' Response and Cross Motion at 19:8–10. Naturally, plaintiffs wholeheartedly agree.

However, the merits of plaintiffs' claims, defendants' defenses, defendants' counterclaims, and plaintiffs' defenses to those counterclaims

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

change nothing. When multiple cases involve a single common issue of law, federal courts are empowered to consolidate the cases.

### D.    Defendants' Exaggerations Regarding the Difference in Damages Among the Victims of Defendants' Racial Aggression Are Unrelated to the Propriety of Consolidating Cases.

It is entirely possible that a jury may find that some plaintiffs were physically injured in different ways than others. This, however, does not mean that each plaintiff needs to have a separate jury to make findings as to each plaintiff's individual damages.

Plaintiffs address the fallacy of defendants' propositions in plaintiffs' cross-motion for class certification, *supra*.

### E.    Defendants Interpose Several Superfluous Arguments That Fail to Advance This Case, But Nevertheless Must Be Briefly Addressed Seriatim.

Defendants' claims of due process ramifications are as vague and misplaced as they are misguided. Having addressed the core question of consolidation of claims, it behooves plaintiffs to first address the many scattered, disparate, and frivolous requests and arguments made in defendants' emotion.[9]

---

[9] Plaintiffs decline to address in depth defendants' childish tact of attempting to amend the title of plaintiffs' motion by substituting "consolidate" to "aggregate." Such wordplay is neither clever nor accurate.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

1.    **Defendants' Unprecedented Attempt to Bootstrap a One-Sided Discovery Extension Is Unsupported by Law, Contrary to the Civil Rules, and Should Be Denied.**

Defendants cite no law that entitles them to a one-sided extension of discovery. Defendants' request is improper, especially considering defendants' discovery conduct in this case.

Plaintiffs respectfully request that, should this Court consolidate these malfeasance cases and deem it appropriate to extend discovery in any way, such extension be equitable and extended to all parties.

2.    **Defendants' Mischaracterization Regarding the Posture of Their Motion for Partial Summary Judgment on Qualified Immunity Is Misleading.**

In a footnote, defendants imply that their pending motion for summary judgment qualified immunity may eliminate plaintiffs' constitutional claims. Plaintiffs could not disagree more for several reasons. First, the officers do not merit qualified immunity under the facts of this case. Second, and more importantly, this is not true because municipalities have no qualified immunity from liability under the Civil Rights Act. *See, e.g., Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

3.    **Defendants' "Experimental Research," Is Inadmissible, Inflammatory, Irrelevant, and Unsupportive of Defendants' Motion; It Should Be Disregarded Entirely.**

Defendants have cited to research that they admit is "experimental," yet they call upon this Court to rely on it in order to justify establishing a long series of duplicative trials. Defendants' citation lacks both foundation, relevance, and admissibility, and it should be disregarded.

## III.    REQUEST FOR CLASS CERTIFICATION

The *Arnold* Plaintiffs, as proposed class representatives, respectfully moves for class certification. FED. R. CIV. P. 23. The proposed class meets the prerequisites of CR 23(a) and the requirements of both CR 23(b)(2) and 23(b)(3), and the Court should grant class certification.

Plaintiffs propose the following class definition:

> All individuals who were present at the premises known as the Top of China or the Attic on September 7, 2002 or September 8, 2002 who were adversely affected by the unlawful or tortious use of chemical munitions, including but not limited to oleoresin capsicum, tear gas, CS or CN, and who were not then employed as law enforcement officers.

This Court should grant class certification, or it should call for additional briefing, conference, or hearing from the parties on the issue of class

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

certification in order to fully inform its decision regarding a full, fair, and efficient judicial resolution of the rights of the parties.

### IV.    BACKGROUND ON CROSS-MOTION FOR CLASS CERTIFICATION

The Court is well aware of the facts giving rise to these claims. Suffice it to say that defendants have alleged that they attacked 300–600 people in the Top of China on or about September 8, 2002.

At present, more than 130 plaintiffs have individually filed suit against defendants for a chemical attack that occurred on the premises of the Top of China, in a relatively short time period. Defendants' malfeasance affected so many plaintiffs that certification as a class is entirely appropriate—indeed, considering the procedural history of this case, a class action is the best way to administer justice without unnecessary delay.

### 1.    Typicality

The *Arnold* plaintiffs include individuals who were located throughout the premises known as the Attic or the Top of China. All of the *Arnold* plaintiffs have alleged that they were injured or harmed by defendants' chemical attack.

Although defendants have argued that these plaintiffs' damages are somehow dependent upon where they stood when defendants' attacked, none of

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 14
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

defendants' characterizations create a class of victim who is not currently represented by the experience of an *Arnold* plaintiff. The *Arnold* plaintiffs are generally African-American students who were enjoying a social gathering when defendants, without warning and with racial animus, deployed chemical munitions throughout the building, causing great harm.

## 2.    Commonality

Commonality is largely an issue of law and is discussed in greater detail below. However, suffice it to say that plaintiffs have alleged that defendants used chemical munitions against all of the attendees of the African-American fundraiser at the Top of China on the night in question. None of the members of the class received any warning before defendants attacked, and all of them were injured or affected by defendants' attack.

## 3.    Numerosity

Defendants have alleged that between 300–600 people were present at the Top of China on the night that of defendants' chemical attack. Assuming that defendants' estimates are accurate, numerosity is presumptively established.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

### 4.    **Adequacy of Representation**

All named plaintiffs are now represented by the same lead attorneys, Darrell L. Cochran and Thaddeus P. Martin IV, of the law firm of Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP. Lead counsel is well versed in civil rights litigation, and they are particularly familiar with defense counsel.

Plaintiffs' law firm is a large, regional firm whose partners include several attorneys experienced in prosecuting class actions. Lead counsel, along with several associates, have been involved in this case since from the beginning, conducting several depositions and defending the discovery depositions of the *Arnold* plaintiffs. Plaintiffs' law firm is the largest in Tacoma and Pierce County, and it has an office in Seattle as well.

Plaintiffs' counsel have the background, resources, and expertise to adequately and successfully represent the interests of the class.

## V.    **EVIDENCE RELIED UPON FOR CROSS-MOTION FOR CLASS CERTIFICATION**

1.    FED. R. CIV. P. 23.

2.    Court records and files therein.

( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

## VI.    ISSUES PRESENTED BY CROSS-MOTION FOR CLASS CERTIFICATION

Under FRCP 23, should this Court certify the *Arnold* matter as a class action where 1) the claims of the *Arnold* plaintiffs are representative of all class members who were present at the Top of China/Attic on September 7–8, 2002, during defendants' chemical attack; 2) the claims of the *Arnold* plaintiffs are common to those of the class; 3) defendants have alleged that there are between 300–600 potential class members, including the *Arnold* and *Logan* plaintiffs; 4) plaintiffs are currently represented by counsel who are experienced in prosecuting class claims, administering class action lawsuits, and dedicating the resources necessary for a large civil rights matter involving hundreds of plaintiffs or potential class members; 5) questions of law and fact common to the class members predominate over individual questions; and 6) a class action is superior to other available methods for the fair and efficient adjudication of the controversies? **Yes; the _Arnold_ matter should be certified as a class action.**

## VII.    ARGUMENT AND AUTHORITY IN SUPPORT OF CROSS-MOTION FOR CLASS CERTIFICATION

Defendant claims that alleged individualized issues of damages defeats plaintiffs' motion for consolidation. Rather, courts hold otherwise. In fact, courts

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 17
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

routinely certify class action lawsuits of individuals who have suffered constitutional torts. The potential for individual damage determinations is no barrier to class certification.

## A.     The Class Satisfies the Requirements of FRCP 23(b)(3).

Class certification is appropriate under FRCP 23(b)(3), the most comprehensive type of class, if common questions of fact or law predominate over individual ones and a class action is superior to other available methods of adjudication. FED. R. CIV. P. 23(b)(3); *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 254, 63 P.3d 198 (2003).[10]

### 1.     Common Questions of Law and Fact Predominate.

The FRCP 23(b)(3) predominance inquiry tests whether the proposed class is "sufficiently cohesive" to warrant adjudication by representation. *Amchem Prods. v. Windsor*, 521 U.S. at 591, 117 S. Ct. 2231, 138 L. Ed. 2d. 1008 (1997). "In deciding whether common issues predominate over individual ones, the court is engaged in a 'pragmatic' inquiry into whether there is a

---

[10] The rules pertaining to class actions in Washington are substantially identical to the federal rules; therefore, Washington cases are illustrative.

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 18
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

'common nucleus of operative facts to each class member's claim." *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 323, 54 P.3d 665 (2002) (quoting *Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662, 666 (E.D. Wash. 2002)).

The *Sitton* court recently affirmed certification of a CR 23(b)(3) class over defendant's claim that each class member would necessarily require litigation regarding individual damages:

> The predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether 'adjudication of common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves.' The predominance requirement is not a demand that common issues be dispositive, or even determinative; it is not a comparison of court time needed to adjudicate common issues versus individual issues; nor is it a balancing of the number of issues suitable for either common or individual treatment.

*Sitton*, 116 Wn. App. at 254. (citing Newberg, Herbert & Conte, Alba, NEWBERG ON CLASS ACTIONS, § 4.25 at 4.86 (3rd ed. 1992)). Rather, the predominance requirement is met where "a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.*

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

In determining whether common issues predominate, the courts direct the inquiry to issues of liability, not damages. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 50 L. Ed. 2d 75, 97 S. Ct. 57 (1976).

### a)     The     Potential     for     Individual     Damage Determinations   Is   No   Barrier   to   Class Certification.

Class certification is appropriate even if individual damage awards must be made. "That class members may eventually have to make an individual showing of damages does not preclude class certification." *Smith*, 113 Wn. App. at 323; *Sitton*, 116 Wn. App. at 254.

As stated by the Honorable Marsha Pechman, in granting class certification under Rule 23(b)(3) and 23(b)(2), "[t]he need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate." *Hansen v. Ticket Track, Inc.*, 213 F. R. D. 412, 416 (W. D. Wa. 2003).

In *Rodriguez v. Carlson*, 166 F. R. D. 465 (E. D. Wa. 1996), the district court certified a plaintiff class holding that individual damage questions do not defeat class action treatment. The court noted that defendant may have accurately identified some potential difficulties in calculating the appropriate

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

damages to be awarded class members, but that these individual issues were largely overshadowed by the predominate common question of liability, making class certification appropriate. *Rodriguez*, 166 F. R. D. at 479.

Courts retain the ability to utilize streamlined adjudicative procedures to address individualized questions of damages. For example, Washington courts provide guidance on how to adjudicate damages if individualized questions arise. *Sitton*, 116 Wn. App. at 255. "Courts have a variety of procedural options to reduce the burden of resolving individual damage issue." *Id*. Such procedural options include "bifurcated trials, use of subclasses or masters, and pilot test cases with selected members, or even class decertification after liability is determined." *Id*. (citing NEWBERG ON CLASS ACTIONS, § 4.25 at 48.4). Courts have a number of methods for dealing with potential individual issues in class litigation:

> Courts have substantially reduced the judicial burdens of resolving individual damage issues through various devices such as bifurcated trials of liability and damage issues with the same or different juries; use of masters or magistrates to preside over individual damages proceedings; class decertification after liability trial accompanied by notice to the class concerning how they may proceed to prove individual damages; establishment of presumptions or inferences of reliance or causation which are predicates to damages entitlement; identification or aspects of

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 21
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

individual damages proofs that are suitable for common adjudication or establishment of damage formulas common for the class, e.g., those that define the damages suffered per unit of items sold, purchased, or owned or those that define the guidelines for eligibility for damages recovery and measurements of amounts or categories of recovery allowed; use of the defendant's records or other available sources to compute or otherwise determine the amount of damages each class member is entitled to recover; use of pilot or test cases for damages with selected class members; and use of subclasses. The "risk is better addressed down the road, if necessary" by altering or amending the class, not by decertifying certification at the outset.

NEWBERG ON CLASS ACTIONS, §4.26, at 225–230 (favorably cited in *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 855–56 (2003)).

Here, where common issues of law and fact predominate as to the illegality of defendants' chemical attack, the racial bias that motivated the attack, and the Pullman Police Department policy or practice that may have caused this attack, any claimed individual damages issues cannot defeat class certification.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

b)     **Courts Routinely Certify, Under CR 23(b)(3)
Policy and Practice Cases Over a Defendant's
Claims of Potential Individual Damage
Determinations.**

Courts across the nation certify strip search class actions, under Rule 23(b)(3), rejecting the very same argument that defendants have interposed in order to defeat plaintiffs' motion for consolidation here. For example, in *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004), the First Circuit upheld certification of two class actions involving jailhouse strip searches. The court found that the action was proper for class treatment because common issues existed as to the Counties' policies and as whether the polices were lawful as applied to groups or individual class members. The court held that questions of individualized damages did not defeat class certification. The court reasoned that if "the class action reserved liability even as to some further unapproved class, this could be a legitimate function." *Tardiff*, 365 F.3d at 7. The court enumerated further options such as an agreement on modest uniform damages for those not claiming special injury, with masters to determine the (potentially few) serious claims for injury. *Id*. The court noted that, if and when liability is established and the remaining dispute is only the amount of damages, it is common experience that a great many claims settle. *Id*.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Likewise, in *Mack v. Boston*, 191 F.R.D. 16 (D.C. Mass. 2000), the court granted class certification under FRCP 23(b)(3) and 23(b)(2) to a class challenging pre-arraignment strip searching at a county jail. Defendant claimed that litigation of class claims would require a multitude of mini-trials on liability and damages. *Mack*, 191 F.R.D. at 29. The court rejected such supposition. As to liability, the court stated that given the uniform and indiscriminate nature of the strip search policy, that liability was amenable to class-wide determination. It went on to explain that although individual inquiries into the impact of the particular searches on a particular class member may be necessary, the potential for differing amounts of restitution did not preclude class certification. *Id*. The court noted that should a genuine problem arise due to variability in damages claims, it would consider subclasses. *Id*.

In *Johns v. DeLeonardis*, 145 F.R.D. 480 (N.D. Ill. 1992), the court certified a strip search class action under FRCP 23(b)(3). The court held that although class members "may have differing damages due to the varying injury done to them during the search, the extent of damages is not an issue at this state of the proceedings; rather it is an issue on the merits." *Johns*, 145 F.R.D. at 485.

In *Smith v. Montgomery County*, 573 F. Supp. 604, 613 (D. Md. 1983), the court certified a FRCP 23(b)(3) class for damages on behalf of persons

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

arrested, detained for 24 hours or less, and subject to strip searches without reasonable cause. The court found that resolution of liability and damages resulting from defendant's alleged indiscriminate strip-search policy was more efficiently settled within the context of a class action. The fact that some class members might make additional changes based on privacy concerns for strip searches made in public places did not render the named plaintiff's claim atypical.

In criminal justice class actions, "[i]f a common question of law exists, the need for individually tailored remedies will not bar certification." NEWBERG ON CLASS ACTIONS, § 25:9 at 536 (4th ed. 2002). "Courts have held that certain types of lawsuits, such as those in the criminal justice area, are inherently class actions because individual wrongs can be righted only by institutional reforms affecting an entire class of people. To attempt to afford relief to specific individuals while denying it to a class would only compound injustice." *Id.*, § 25:25 at 580.

### c) Adjudication of Damages in CR 23(b)(3) Class Actions.

Courts have emphasized that potential individual damage questions can be addressed in CR 23(b)(3) class actions by "use of subclasses or masters, and

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

pilot test cases with selected members or even class decertification after liability is determined." *Sitton*, 116 Wn. App. at 255.

In *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 54 P.3d 665 (2002), the jury determined class member damages under a class wide damages formula. The trial court certified and tried a CR 23(b)(3) plaintiff class with members in 19 counties in western Washington. The Court of Appeals affirmed the trial court's rulings certifying the class and awarding damages following the jury trial. The jury awarded damages ranging from $14,454 to $87,818 to class representatives and the jury adopted a damages matrix setting forth damages amounts for absent class members. *Behr*, 113 Wn. App. at 317.

In class actions involving widespread criminal justice malfeasance, courts have also endorsed a presumptive damages formula for class-wide damage determinations. In *Langley v. Coughlin*, 715 F.Supp. 522 (S.D.N.Y. 1999), the court certified under FRCP 23(b)(3) a class of prisoners challenging the conditions of their confinement with multiple subclasses. The court grouped those plaintiffs seeking recovery for failure to treat medical needs into two subclasses; one with those most seriously ill and the other with those less severely. *Langley*, 715 F.Supp. at 552. Defendants argued that damages must be based on the emotional or other injury to the individual as a result of the

( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

conditions, and that this necessitated an individualized inmate-by-inmate inquiry concerning the extent of injury, negating the value of class certification. *Id.* at 557. Adopting the magistrate's report, the court ruled defendants' arguments were unpersuasive: "the task of damages determination is less imposing than defendants paint it." *Id.* at 558. The court endorsed a presumptive damages procedure:

> Compensation for pain and suffering—whether physical or emotional—inevitably involves substantial inexactitude, and thus it is not surprising that the federal courts have countenanced the use of arbitrary but efficient across-the-board measures of such suffering, even in non-class cases. *See, e.g., Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583, 587 (2nd Cir. 1961), *cert. denied*, 368 U.S. 989, 7 L. Ed. 2d 526, 82 S. Ct. 606 (1962) (assessing pain and suffering damages for eleven crewmen of capsized ship at $150.00 per hour regales of individual circumstances and cause of death (if any), which varied from shark bite to exposure to drowning). In class cases, the courts have found still further justification for accepting some degree of imprecision in damage awards, even for economic loss, if substantial justice is done. *See, e.g., Stewart v. General Motors Corp.*, 542 F.2d 445, 452–53 (7th Cir. 1976), *cert. denied*, 433 U.S. 919, 53 L. Ed. 2d 1105, 97 S. Ct. 2995 (1977); *United States v. Unites States Steel Corp.*, 520 F.2d 1043, 1056 (5th Cir. 1975), *cert. denied*, 429 U.S. 817, 50 L. Ed. 2d 77, 97 S. Ct. 61 (1976); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260-61 (5th Cir. 1974), *cert. denied*, 439 U.S. 1115, 59 L. Ed. 2d 74, 99 S. Ct. 1020 (1979); *F.W.*

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 820-6500 - FACSIMILE (253) 820-6565

> *Wollworth Co. v. NLRB*, 121 F.2d 658, 663 (2nd Cir. 1941); *Senter v. General Motors Corp.*, 383 F. Supp. 222, 229 (S.D. Ohio 1974), *aff'd*, 532 F.2d 511 (6th Cir.), *cert denied*, 429 U.S. 870, 50 L. Ed. 2d 150, 97 S. Ct. 182 (1976).

*Id.*

The court described that the damages procedure could allow either party seeking a variation to the damages formula—either up or down—for specific class members. *Id*. at 559. The court concluded that, in any event, separated damage proceedings are not inconsistent with class certification. *Id*.

The Court has a number of methods for dealing with potential individual damages questions. *See Sitton*, 116 Wn. App. at 255; *Miller*, 115 Wn. App. at 855–56. The possibility that individualized damages determinations may be needed does not diminish the appropriateness of class certification. *Smith*, 113 Wn. App. 323. Obviously, the same could be said about the need for consolidation of these claims.

### 2. A Class Action is the Superior Method of Adjudication.

As a general rule, where a class contains at least 40 members, courts recognize a reputable presumption that class certification is preferable to joinder. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

1986), *cert. denied*, 479 U.S. 883, 93 L. Ed. 2d 250, 107 S. Ct. 274 (1986); *Chandler v. Southwest Jeep Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995); *accord* NEWBERG ON CLASS ACTIONS, § 305. Here, a class action provides a manageable method and forum for these hundreds of plaintiffs to litigate their claims.

Already in the *Arnold* and *Logan* matters, there are several pending motions, numbering in the teens. As these cases get closer to trial, that number will increase drastically. A class action will permit the plaintiffs to bring claims that could be economically prohibitive to adjudicate individually, thereby maintaining access to justice for hundreds.

**B.    The Class Satisfies CR 23(b)(2).**

**1.    Courts Certify CR 23(b)(2) Plaintiff Classes of Victims of Excessive Force by Law Enforcement.**

Courts have held that class actions under CR 23(b)(2) are, likewise, not precluded by the possibility that individual issues may arise once the illegality of the questioned practice is determined. In *King v. Riveland*, 125 Wn.2d 500, 886 P.2d 160 (1994), the court affirmed certification of a plaintiff class of prison inmates against the Department of Corrections under CR 23(b)(2). The court rejected the DOC's claim that individualized issues weighed against

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

certification. The court held "[c]omplete unanimity of position and purpose is not required among members of a class in order for certification to be appropriate." *King*, 125 Wn.2d at 519. "The DOC is attempting to make this case more complicated than it need be." *Id*.

Here, too, defendants attempt to make this case more complicated than it is. Resolution of liability and damages resulting from defendants unwarranted, unconstitutional, and tortious chemical attack can be efficiently resolved by class adjudication.

Defendants imply that they may have been justified in attacking certain plaintiffs, and that this distinction precludes consolidation. Defendants are incorrect. In *Johnson v. Moore*, 80 Wn.2d 531, 496 P.2d 334 (1972), the court reversed and remanded the trial court's denial of class certification of a class of detainees who challenged the alleged practice of holding individuals in the Seattle city jail on suspicion of various crimes without bringing them promptly before a magistrate. The court found that a class action under CR 23(b)(2) was appropriate. *Johnson*, 80 Wn.2d at 535. The court framed the "fundamental question presented" as whether the police department should be restrained from holding members of the class an unnecessary amount of time without bail. *Id*. The court found "[w]hether the reasonableness or necessity of a period of

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 30
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

detention is determined with reference to the facts of each individual's case, or whether unvarying standards can be applied to all cases, as appellants suggest, the legal principles under the reasonableness of a detention is determined are common to all members of the class." *Id.* The court held that "a class action is not precluded by the possibility that individual issues may predominate once the general illegality of the questioned practice is determined." *Id.* The impropriety of defendants' chemical attack can be determined on similar principles with a consolidation of claims or the certification of a class action.

In *Walden v. City of Seattle*, 77 Wn. App. 784, 892 P.2d 745 (1995) the court certified a plaintiff class under CR 23(b)(2) asserting 42 U.S.C. § 1983 and state tort claims. The alleged injured plaintiffs claimed that the City police department's dog handlers and dogs used excessive or deadly force. The class sought compensatory and punitive damages. The court rejected the City's argument against class-wide determination. The court stated: "Although the City contends the underlying excessive force issue is not properly suited for en masse determination, the Superior Court did not commit obvious or probable error in light of the case law giving trial courts considerable leeway in this area." *Walden*, 77 Wn. App. at 790 (citing *Johnson*, 80 Wn.2d 531; *Brown*, 6 Wn.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 ~ FACSIMILE (253) 620-6565

App. at 255–56). Here, too, class certification is warranted where defendants "acted . . . on grounds generally applicable to the class." FRCP 23(b)(2).

### 2.    Individual Damage Determinations Do Not Defeat Class Certification Under FRCP 23(b)(2).

There can be no question that civil rights claims are appropriate for class certification. Federal courts agree. *See, e.g., Mack*, 191 F.R.D. at 24 (stating that this "section of Rule 23 was designed to accommodate civil rights class actions"); *Dodge v. County of Orange*, 206 F.R.D. 65 (S.D.N.Y. 2002); *Bynum*, 217 F.R.D. at 48.

Individual damage determinations do not defeat class certification. In *Dodge*, the court certified a class of detainees under Rule 23(b)(2) alleging that the strip search policy at the county jail was unconstitutional. The court held that the case would proceed in two stages. First, a trial to decide what strip search policy was in place, whether it was constitutional, and whether permanent injunctive relief was appropriate. *Dodge*, 209 F.R.D. at 78–9. Then, if the class prevailed on those issues, individual damages trial would commence. *Id.*

In *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983), the court detailed that three of the plaintiffs (Mary Beth G., Sharon N., and Hoffman) were plaintiffs in the certified FRCP 23(b)(2) class action suit, *Jane*

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

*Doe v. City of Chicago*, No. 79 C 789 (N.D. Ill. 1982), *affirmed sub nom.*, *Mary Beth G.*, 723 F.2d 1263 (7th Cir. 1983), where the City's strip search policy was challenged as unconstitutional. The court in *Mary Beth G.* described that in the class action the court ordered parties to select typical cases to separate out for trial on the issues of plaintiffs' damages. Jury trials were held and verdicts were returned for $25,000 for plaintiffs Mary Beth G. and Sharon N., and an award of $60,000 for Hoffman. *Mary Beth G.*, 723 F.R.D. at 1266. The Seventh Circuit affirmed the amount of the verdicts in each of these cases.

## VIII. CONCLUSION

For the reasons discussed above, plaintiffs respectfully request that this Court grant plaintiffs' motion and consolidate these matters into a single proceeding for a single trial. In the alternative, for the reasons discussed above, plaintiffs respectfully request that this Court certify this case as a class action.

The proposed class, the *Arnold* plaintiffs, satisfies all the elements of FRCP 23(a), 23(b)(2), and 23(b)(3). By certifying the proposed class, this Court will ensure that common issues of law and fact arising out of defendants' conduct will be resolved in a single forum. This proposed class achieves the goals of judicial economy and efficiency that FRCP 23 was designed to

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

effectuate. Therefore, plaintiffs respectfully request that the Court certify this case as a class action under CR 23(b)(2) and 23(b)(3).

Dated this ___11th___ day of February, 2005.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By _____

Darrell L. Cochran, WSBA No. 22851
dcochran@gth-law.com
Thaddeus P. Martin, WSBA No. 28175
tmartin@gth-law.com
Attorneys for Plaintiffs

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 34
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

1

## CERTIFICATE OF SERVICE

2

I HEREBY CERTIFY that on February 11, 2005, I electronically filed the

3

foregoing document with the Clerk of the Court using the CM/ECF system

4

5

which will send notification of such filing to the following:

6

(1) Andrew George Cooley at acooley@kbmlawyers.com;

7

8

(2) Stewart Andrew Estes at sestes@kbmlawyers.com; and

9

(3) Kimberly J. Waldbaum at kwaldbaum@kbmlawyers.com.

10

11

12

s/ _____

13

Darrell L. Cochran, WSBA No. 22851
Thaddeus P. Martin, WSBA No. 28175
Attorneys for Plaintiffs
Gordon, Thomas, Honeywell, Malanca,
Peterson & Daheim LLP
1201 Pacific Avenue, Suite 2100
Post Office Box 1157
Tacoma WA  98401-1157
Telephone: (253) 620-6500
Fax: (253) 620-6565
E-mail:     dcochran@gth-law.com
                 tmartin@gth-law.com

14

15

16

17

18

19

20

21

22

23

24

25

26

PLS' REPLY SUPP CONSOLIDATION AND CLASS CERT X-MOT - 35
of 34
( CS-04-214-FVS)
[1299858 v03.doc]25726-01

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565