UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

NICOLE LOGAN, et al.,

               Plaintiffs,

       v.

CITY OF PULLMAN POLICE
DEPARTMENT, et al.,

             Defendants.

No. CV-04-214-FVS

ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
RE:  PLAINTIFFS' STATE LAW
CLAIMS

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment Re:
Plaintiffs' State Law Claims (Ct. Rec. 242).  Plaintiffs are
represented by Darrell Cochran and Thaddeus Martin.  Defendants are
represented by Kimberly Waldbaum, Andrew Cooley, Stewart Estes, and
Richard Jolley.

I.    **BACKGROUND**

    This is a class action arising from the response of the City of
Pullman Police Department ("Defendant City") to an altercation at the
Top of China Restaurant and Attic Nightclub on September 8, 2002.  The
alleged facts are set forth in detail in the Court's Order Granting in
Part and Denying in Part Defendants' Motion for Partial Summary
Judgment Re: Qualified Immunity.  (Ct. Rec. 240).  Plaintiffs assert
claims against the individual officers named in this action
("Officers") under Washington state law for assault (Complaint, ¶
6.2), intentional infliction of emotional distress or the tort of

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 1

outrage (Complaint, ¶ 6.3), and negligence (Complaint, ¶ 6.4), as well as claims against the Defendant City for negligence under a theory of respondeat superior (Complaint, ¶ 6.4) and negligent training, hiring, and supervision (Complaint, ¶ 6.5).  Defendants move for summary judgment dismissal of these claims.

## II.   SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548, 2552 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 586-87, 106 S.Ct. 1348, 1356 (1986).  There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).  A mere "scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment.  *Id.* at 252, 106 S.Ct. at 2512.  The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact.  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).  Rather, the non-

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 2

moving party must present admissible evidence showing there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 f.3d 1044, 1049 (9th Cir. 1995).  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

**III.  DISCUSSION**

**A.    *Negligent Hiring, Supervision & Training***

Defendants move for summary judgment dismissal of Plaintiffs' claims against Defendant City for negligent hiring, supervision, and training.  Defendants argue Plaintiffs' claim for negligence against Defendant City under a theory of respondeat superior is mutually exclusive of Plaintiffs' claims for negligent hiring, supervision and training.

Defendant City acknowledges it is liable under a theory of respondeat superior for any negligence on the part of the Officers because they were acting within the scope of their employment on the night in question.  Therefore, Defendants contend Plaintiffs' claims for negligent hiring, supervision and training should be dismissed because those causes of action pertain only to situations where an employee is acting outside the scope of employment.  *Gilliam v. Dep't of Social and Health Servs*, 89 Wash.App. 569, 585, 950 P.2d 20, 28, *rev. denied*, 135 Wash.2d 1015 (1998) ("When an employee causes injury by acts beyond the scope of employment, an employer may be liable for negligently supervising the employee."); *Niece v. Elmview Group Home*,

131 Wash.2d 39, 48 (929 P.2d 420, 426 (1997) ("Negligent supervision creates a limited duty to control an employee for the protection of a third person when the employee is acting outside the scope of employment.").  In response, Plaintiffs argue their claims against the City for negligent hiring, supervision and training are based on allegations separate from those supporting their claim for negligence against the Officers.  However, all of Plaintiffs' negligence claims are dependent upon a finding that the Officers were negligent and that this negligence was the proximate cause of the Plaintiffs' injuries. *See Scott v. Blanchet High Sch.*, 50 Wash.App. 37, 43, 747 P.2d 1124, 1128 (1987).  Therefore, since Defendants acknowledge they are vicariously liable for the Officers' negligence, Plaintiffs' claims for negligent hiring, supervision, and training are redundant.  *See e.g., Gilliam*, 89 Wash.App. 569, 950 P.2d 20 (upholding trial court's dismissal of plaintiff's claim for negligent supervision as redundant of other negligence claims because defendant acknowledged its employees were acting within the scope of employment).

Plaintiffs attempt to distinguish the facts of this case from those in *Gilliam.*  Plaintiffs claim an important distinction exists because *Gilliam* involved the negligence of only one employee whereas this case involves the actions of multiple parties.  However, this is a distinction without difference.  The reason the *Gilliam* court held that the plaintiff's claim for negligent supervision against the employer was redundant with the plaintiff's claim for vicarious liability is that both causes of action rested upon a determination

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 4

that the employee was negligent and that this negligence was the
proximate cause of the plaintiff's injuries.  *Id.* 585, 950 P.2d at 28.
The same is true here.  If the Officers are found negligent in this
action, Defendant City acknowledges it will be held strictly liable
under a theory of respondeat superior, regardless of the
reasonableness of the hiring, supervision or training of the Officers.
If the Officers are not found negligent, no action for negligent
training, supervision or hiring may proceed against Defendant City.
Because Defendant City has acknowledged the Officers were acting
within the scope of their employment, any evidence necessary to
prevail on an additional claim of negligent hiring, training or
supervision becomes unnecessary, irrelevant and prejudicial.
Accordingly, Defendants' motion for summary judgment is granted to the
extent is seeks dismissal of Plaintiffs' claims for negligent
supervision, training, and hiring.

   **B.   Assault**

   The Washington legislature has not defined "assault" but
Washington common law "recognizes three forms of assault: (1) assault
by actual battery; (2) assault by attempting to inflict bodily injury
on another while having apparent present ability to inflict such
injury; and (3) assault by placing the victim in reasonable
apprehension of bodily harm."  *State v. Hall*, 104 Wash.App. 45, 62, 14
P.3d 884, 887 (Div. 3, 2000) (citations omitted).  In this case,
Plaintiffs appear to rely on the third definition, which requires
specific intent that the Officers intended to create apprehension of

bodily harm.  *State v. Byrd*, 125 Wash.2d 707, 713, 887 P.2d 396, 399 (1995).

### 1.  Intent Element

Under the third means of proving assault, Plaintiffs must show the Officers specifically intended to cause apprehension and fear of imminent bodily injury, which resulted in reasonable apprehension and imminent fear of bodily injury even though they did not intend to inflict bodily injury.  *Hall*, 104 Wash.App. at 889, 15 P.3d at 65 (citing *State v. Byrd*, 125 Wash.2d 707, 713, 887 P.2d 396, 399 (1995)).  Negligence alone is insufficient; there "must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm."  *State v. Krup*, 36 Wash.App. 454, 458, 676 P.2d 507, 510 (Div. 1, 1984).  Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances.  *State v. Wilson*, 125 Wash.2d 212, 217, 883 P.2d 320, 323 (1994).

Defendants argue the Officers did not intend to assault those plaintiffs who were directly sprayed with O.C. because the use of force was lawful and necessary to break up a fight.  However, the Court previously determined that material issues of fact exist as to whether the Officers' use of O.C. spray constituted excessive force, in violation of the Fourth Amendment.  Order, 28-29.  Based on the same evidence that was before the Court during the motion for summary judgment on qualified immunity, Plaintiffs contend material issues of fact exist with respect to the Officers' intent.  Specifically, in

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 6

addition to the method in which the Officers used O.C. spray inside the building, Plaintiffs allege the Officers took deliberate actions to keep Plaintiffs inside the building after dispersing O.C. spray. Further, Plaintiffs have presented testimony that the Officers refused to provide assistance to injured plaintiffs and prevented others from rendering assistance to the injured plaintiffs.  Finally, Plaintiffs point to Luam Tekle's testimony that when he got outside he witnessed the Officers "laughing" and Plaintiff Willie Brent's testimony that the Officers appeared pleased with themselves and had a "smile of success" on their faces.  In light of these allegations and others, the Court determines a reasonable jury could conclude the Officers intended to cause those plaintiffs who were directly sprayed with O.C. a reasonable apprehension of imminent bodily harm.  Thus, the Court determines Plaintiffs have presented sufficient allegations to create a genuine material issue of fact with respect to the Officers' intent as it pertains to those plaintiffs who were directly sprayed with O.C.

Relying on the Court's previous Order, Defendants argue the Court has already resolved the "intent" issue with respect to those plaintiffs who were not sprayed directly with O.C., but suffered secondary effects.  Defendants argue those plaintiffs cannot prove they were assaulted because they were not the "intended" object of the Officers' actions.  Ct. Rec. 299, 2:10-14 (concluding that "those plaintiffs who only suffered secondary exposure to the pepper spray were not seized ... because there was no evidence they were the deliberate and intended object of the Officers' use of pepper

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 7

spray.").  However, the portion of the Court's ruling quoted by Defendants was specific to the issue of whether there was a "seizure" within the meaning of the Fourth Amendment.  Here, Plaintiffs argue the Officers' intent with respect to those plaintiffs who were directly sprayed with O.C. transfers to those individuals who were not directly sprayed for purposes of the tort of assault.

"The 'transferred intent' doctrine is a tort concept[.]" *State v. Clinton*, 24 Wash.App. 400, 401 n. 1, 606 P.2d 1240 (Div. 3, 1980). "In general it may be said that if one intends injury to the person of another under circumstances in which such a mental pattern constitutes mens rea, and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate." *Id.*  Although Defendants argue the doctrine of transferred intent does not apply to civil assault, they do not cite any authority for this proposition. Therefore, the Court concludes the doctrine of transferred intent is applicable here and determines that the Officers' intent with respect to the those individuals who were directly sprayed by O.C. transfers to all of the plaintiffs who were inside the building when the O.C. was sprayed.  Accordingly, the Officers' intent is a question of fact for the jury.

        2.    Apprehension

In order to survive summary judgment, Plaintiffs must also demonstrate they were placed in apprehension of imminent physical harm.  *Brower v. Ackerley*, 88 Wash.App. 87, 92, 943 P.2d 1141, 1144

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 8

(Div. 1, 1997) ("The elements of civil assault have not been frequently addressed in Washington cases.  The gist of the cause of action is 'the victim's apprehension of imminent physical violence caused by the perpetrator's action or threat.").  "The apprehension created must be a reasonable one[.]"  *Brower,* 88 Wash.App. at 94, 943 P.2d at 1145 (holding that anonymous, harassing telephone calls did not threaten immediate harm and therefore could not support assault claim) (citation omitted).  "Imminent" does not mean immediate, in the sense of instantaneous contact.  Rather, it means there will be no significant delay.  *Id.*

Defendants argue the Plaintiffs on the second floor cannot show the Officers' use of O.C. spray created a reasonable apprehension of imminent physical harm because they were not aware of the Officers' presence on the first floor.  However, Plaintiffs did not necessarily need to apprehend that the Officers themselves would inflict bodily harm.  Rather, the Officers are liable for assault if Plaintiffs experienced apprehension of imminent bodily harm from the O.C. disbursed by the Officers.  *See* Restatement (Second) of Torts, § 25, cmt. a ("It is not essential to assault that the actor shall have put the other in apprehension that the actor himself will inflict the contact upon him.  The other may be equally frightened and alarmed, and the harm to his peace of mind may be equally great, where the apprehension is aroused that a third person is about to inflict the contact, or even that it is about to be inflicted by some force of nature.").

Here, Plaintiffs allege the Officers caused apprehension of imminent harmful contact in at least one of three ways: (1) Plaintiffs sensed or smelled the chemicals and immediately knew they were going to be engulfed in it; (2) Plaintiffs saw the chemicals or the effect of the O.C. spray on others;[1] and (3) the Officers intentionally prevented Plaintiffs from leaving the premises through some of the exits.  If proven, these allegations are sufficient to satisfy the apprehension element of assault.  The Court concludes that Plaintiffs have raised material issues of fact that prevent the summary judgment dismissal of their assault claims.

### 3.    Statute of Limitations

The statute of limitations for an assault claim is two years.  RCW 4.16.100(1); *see also Boyles v. City of Kennewick*, 62 Wash.App. 174, 176, 813 P.2d 178, 179 (Div. 3, 1991) (applying two-year statute of limitations to claims against police officer for assault and battery).  The incident at issue in this action occurred on September 8, 2002, which means the statute of limitations ran on September 8, 2004.  This lawsuit filed by Nicole Logan was initiated on March 19, 2004, but she did not file a motion to amend her complaint to add the

---

[1] As the Court noted in its original Order addressing qualified immunity, "Celena Gonsalvez' testimony describes an experience similar to the majority of plaintiffs' experience: 'I was upstairs with music and having a good time, and then all of a sudden, all of our throats started burning.  Our eyes were burning.  People started passing out.  Girls and boys both were passing out, and that kind of – I saw people vomiting.  I saw all kinds of stuff.  I saw people scurrying.  Very-very-scared faces on some people's faces.  It was – it was pretty scary."

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS – 10

43 additional plaintiffs named in this action until May 20, 2005. Consequently, Defendants move to dismiss the assault claims of these additional 43 Plaintiffs on the basis that they are barred by the statute of limitations. Plaintiffs argue their claims are not barred by the statute of limitations because they relate back to the filing of the original complaint.

In the Ninth Circuit, "[a]n amendment adding a party plaintiff relates back to the date of the original pleading only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *Immigrant Assistance Project of Los Angeles v. INS*, 306 F.3d 842, 857 (9th Cir. 2002) (citation omitted). At issue in this case are the notice prejudice factors.

Plaintiffs claim the original complaint provided Defendants with adequate notice of the claims of the 43 newly added plaintiffs because the scheduling order in this case set a specific date for joining additional parties and because the complaint itself identified conduct that allegedly affected a large group of people. However, the scheduling order Plaintiffs refer to was entered on October 22, 2004, after the statute of limitations expired. Further, beyond identifying actions that alleged involved a large group of people, the original complaint gave no indication that Plaintiff Nicole Logan would seek to join other plaintiffs. Moreover, she did not file her Motion to Amend

the Complaint to Join Parties until January 24, 2005, almost 10 months after the filing of the original complaint. Plaintiffs also argue the notice requirement has been satisfied because they sent a letter to Defendant and the Court requesting permission to add the additional plaintiffs before the statute of limitations expired. On August 24, 2004, the Court held a telephonic conference to address Plaintiffs' letter. The Court specifically informed Plaintiffs that communication with the Court through letters was inappropriate and that they needed to file a motion if they wanted to join parties in this action. However, Plaintiffs failed to bring a formal motion to join these parties until almost one year later, several months after the expiration of the statute of limitations.

The Court determines that but for this delay in filing a proper motion, the additional plaintiffs could have been formally added well within the statute of limitations. Allowing Plaintiffs' claims for assault to relate back to the filing of the original complaint would allow the tardy plaintiffs to benefit from the diligence of the other plaintiffs and would likely cause the Defendants' prejudice. Further, the certification of this action as a class action does not save the additional Plaintiffs' assault claims because the motion seeking certification was not filed until more than one year after the expiration of the statute of limitations. Accordingly, the Court concludes the assault claims of those plaintiffs who were joined in the *Logan* action are barred by the applicable statute of limitations.

**C.    *Outrage (Intentional Infliction Emotional Distress)***

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 12

To prove a claim for intentional infliction of emotional distress, otherwise known as the tort of outrage in Washington, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted emotional distress, (2) the conduct of the defendant was outrageous and extreme, (3) the conduct resulted in severe emotional distress to the plaintiff. *Reid v. Pierce County*, 136 Wash.2d 195, 202, 961 P.2d 333, 337 (1998). Here, Defendants argue Plaintiffs cannot satisfy the second and third factors.

### 1.   Outrageous & Extreme Conduct

To prove extreme and outrageous conduct, it is not enough to show that the Officers acted with an intent that was tortious or even criminal, or that they intended to inflict emotional distress. *Grimsby v. Samson*, 85 Wash.2d 52, 59, 530 P.2d 291, 295 (1975). Liability exists only where the conduct is so outrageous and extreme in character that it goes "beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." *Id.* Whether conduct is sufficiently outrageous is ordinarily a question for the jury, but the Court may grant summary judgment dismissing an outrage claim if reasonable minds could not differ on whether the conduct is sufficiently outrageous. *Dicomes v. State*, 113 Wash.2d 612, 630, 782 P.2d 1002 (1989).

In determining whether an outrage claim should go to the jury, a relevant consideration for the Court is the relationship between the parties. *Keates v. City of Vancouver*, 73 Wash.App. 257, 264, 869 P.2d 88, 92 (Div. 2, 1994) (citation omitted); *Phillips v. Hardwick*, 29

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 13

Wash.App. 382, 388, 628 P.2d 506, 510 (Div. 1, 1981). Here, the Defendants were police officers. The fact that they held a position of authority over the Plaintiffs is a factor the Court considers in reviewing the Plaintiffs' outrage claim.

As evidence that the Officers' conduct was outrageous, Plaintiffs point to the Court's previous Order wherein the Court held that Plaintiffs' "allegations that the Defendant Officers refused to provide assistance to the injured Plaintiffs, refused to allow Plaintiffs to assist one another, and tried to keep the Plaintiffs inside the building after the O.C. was sprayed evidenced a purpose to cause harm unrelated to any legitimate use of force by the Defendant Officers, thereby satisfying the "shocks the conscience[.]" Reconsideration Order, at 9. A reasonable jury could conclude these actions, if proven true, were outrageous. Further, a reasonable jury could conclude the Officers' use of O.C. on a crowd, inside a closed building, immediately upon arrival, was extreme and outrageous.

> 2. <u>Severe Emotional Distress</u>

"[O]bjective symptomatology is not required to establish intentional infliction of emotional distress." *Kloepfel v. Bokor*, 149 Wash.2d 192, 198, 66 P.3d 630, 633 (2003). Where the alleged conduct satisfies the outrageous and extreme conduct element, the case should go to the jury as long as the "alleged damages are more than mere annoyance, inconvenience, or normal embarrassment that is an ordinary fact of life." *Brower*, 88 Wash.App. at 101-02, 943 P.2d at 1149 (citation and internal quotations omitted). Defendants argue

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 14

Plaintiffs have failed to set forth sufficient evidence showing they suffered "severe" emotional distress because Plaintiffs cite only eight depositions.  However, for purposes of this summary judgment motion, the Court accepts Plaintiffs' representations that the allegations of these plaintiffs are fairly representative of the remaining Plaintiffs.  These declarations indicate Plaintiffs continue to fear for their safety in Pullman and they fear gathering together in any large group consisting of African-Americans or minorities.  The Court concludes these allegations of emotional distress are more that "mere annoyance and inconvenience."  Accordingly, whether Plaintiffs suffered severe emotional distress is a question for the jury.

### D.   *Negligence*

Proof of negligence requires that the defendant owe a duty to the plaintiff, that the defendant breach that duty and that the breach is the proximate cause of the injuries to the plaintiff.  *Hertog v. City of Seattle*, 138 Wash.2d 265, 276, 979 P.2d 400 (1999).  Negligence requires only a showing of a failure to use reasonable or ordinary care, that degree of care that an ordinary careful and prudent person would exercise under the same or similar circumstances or conditions. *Gordon v. Deer Park Sch. Dist.*, 71 Wash.2d 119, 122, 426 P.2d 824 (1967).

Without providing any analysis, Defendants move to dismiss Plaintiffs' claims for negligence, arguing only that these claims are

"without merit."[2]  Plaintiffs argue material issues of fact exist as to whether the Officers were negligent.  Specifically, Plaintiffs allege the Officers were negligent because they:  (1) "failed to communicate knowledge of the social function at the Top of China between changing shifts and plan for a controlled response to situations at the function"; (2) "failed to plan and assess [their] response to the call for assistance"; (3) "failed to establish physical presence at the scene, verbalize a cease and desist order, and control the isolated disturbance with as little force as possible"; (4) "failed to assess the environmental conditions of the confined building before discharging oleoresin capsicum"; (5) discharged O.C. "into a confined building occupied by several hundred innocent persons"; (6) "failed to provide for safe crowd control following intentional use of gas in the building"; and (7) failed to administer medical attention to or call for a medical response on behalf of the victims[.]"

On the present record, the Court cannot conclude as a matter of law that all reasonable minds would agree that the Officers exercised the ordinary care or such care as a reasonable person would have exercised under the same or similar circumstances.  Looking at the facts in the light most favorable to Plaintiffs, there is evidence sufficient to raise issues of material fact with respect to whether the Officers were negligent.  Therefore, Defendants motion for summary

---

[2] Although it appears Defendants have withdraw their request for summary judgment on Plaintiffs' negligence claims because Defendants did not address the issue in their reply brief, the Court reviews Plaintiffs negligence claims on the merits.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE:  PLAINTIFFS' STATE LAW CLAIMS - 16

judgment is denied to the extent it seeks dismissal of Plaintiffs'
negligence claims.

**CONCLUSION**

Defendants' motion for summary judgment is granted to the extent
it seeks dismissal of Plaintiffs' claims for negligent supervision,
training, and hiring.  The assault claims of those Plaintiffs who
joined the *Logan* case are barred by the statute of limitations.
However, with respect to the  assault claims of the remaining
Plaintiffs in this consolidated action, Defendants motion for summary
judgment is denied.  Defendants' motion for summary judgment is denied
to the extent it seeks dismissal of Plaintiffs' claims for outrage and
negligence.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment
Re:  Plaintiffs' State Law Claims (**Ct. Rec. 242**) is **GRANTED IN PART
AND DENIED IN PART.**

**IT IS SO ORDERED.**  The District Court Executive is hereby
directed to enter this order and furnish copies to counsel.

**DATED** this <u>10th</u> day of April, 2006.

<u>s/ Fred Van Sickle</u>
Fred Van Sickle
United States District Judge
