UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

NICOLE LOGAN, et al.,

                  Plaintiffs,

        v.

WILLIAM WEATHERLY, DAN HARGRAVES;
RUBEN HARRIS; DON HERROF; and
ANDREW WILSON, et al.,

                  Defendants.

No. CV-04-214-FVS

ORDER RE: DEFENDANTS' MOTION
FOR RECONSIDERATION RE:
COURT'S ORDER DENYING IN PART
AND GRANTING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE:
PLAINTIFFS' STATE LAW CLAIMS

**BEFORE THE COURT** is Defendants' Motion for Reconsideration Re: Court's Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment Re: Plaintiffs' State Law Claims. (Ct. Rec. 395). Plaintiffs are represented by Darrell Cochran and Thaddeus Martin. Defendants are represented by Andrew Cooley, Stewart Estes, Kim Waldbaum and Richard Jolley.

**I.    BACKGROUND**

This is a class action arising from the response of the City of Pullman Police Department to an altercation at the Top of China Restaurant and Attic Nightclub on September 8, 2002. The alleged facts are set forth in detail in the Court's Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment Re: Qualified Immunity. (Ct. Rec. 240). Plaintiffs' Amended

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 1

Complaint asserts claims against the individual Defendant Officers under Washington state law for assault (Complaint, ¶ 6.2), intentional infliction of emotional distress or the tort of outrage (Complaint, ¶ 6.3), and negligence (Complaint, ¶ 6.4), as well as claims against the City of Pullman Police Department for negligence under a theory of respondeat superior (Complaint, ¶ 6.4) and negligent training, hiring, and supervision (Complaint, ¶ 6.5). *See* Ct. Rec. 137. Defendants moved for summary judgment dismissal of these claims under Washington state law. The Court entered an Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment ("Order"). (Ct. Rec. 391). Specifically, the Court granted Defendants' motion for summary judgment dismissal of Plaintiffs' claims for negligent supervision, training and hiring. With respect to Plaintiffs' assault claims that were not barred by the applicable statute of limitations, the Court denied Defendants' motion for summary judgment. Further, the Court denied Defendants' motion for summary judgment to the extent it sought dismissal of Plaintiffs' claims for outrage and negligence. Defendants now move for reconsideration of the Court's Order as it pertains to Plaintiffs' assault claims and negligence claims.

**II.  DISCUSSION**

Defendants seek reconsideration of the Court's Order on two specific grounds: (1) whether Plaintiffs' negligence claims are barred by the public duty doctrine; and (2) whether the doctrine of transferred intent is applicable to Plaintiffs' assault claims.

//

**A.    Standard of Review**

The Federal Rules of Civil Procedure do not mention a "motion for reconsideration."  Even so, a motion for reconsideration is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within ten days of entry of judgment.  *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 397 (9th Cir.1992).  Here, Defendants timely filed their motion for reconsideration.  Thus, it is within the Court's discretion to reconsider its Order.  *See School Dist. No. 1J, Multnomah County, OR v. AcandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).  Accordingly, the Court exercises its discretion and will reconsider its Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment Re: Plaintiffs' State Law Claims ("Order").

**B.    Negligence**

Plaintiffs' Amended Complaint alleges the individual Defendant Officers were negligent because they:  "(1) failed to communicate knowledge of the social function at the Top of China between changing shifts and plan for a controlled response to situations at the function; (2) failed to plan and assess their response to the call for assistance; (3) failed to establish physical presence at the scene, verbalize a cease and desist order, and control the isolated disturbance with as little force as possible; (4) failed to assess the environmental conditions of the confined building before discharging oleoresin capsicum; (5) discharged O.C. into a confined building occupied by several hundred innocent persons; (6) failed to provide

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 3

for safe crowd control following intentional use of gas in the building; and (7) failed to administer medical attention to or call for a medical response on behalf of the victims." Court's Order, at 16 (internal quotations omitted) (citing Plaintiffs' Amended Complaint, ¶¶ 6.4.1 - 6.4.7.). The Court concluded that whether "the Officers exercised the ordinary care or such care as a reasonable person would have exercised under the same or similar circumstances ... raised issues of material fact with respect to whether the Officers were negligent." Court's Order, at 16. On that basis, the Court denied Defendants' motion for summary judgment on Plaintiffs' negligence claims.

Defendants move for reconsideration, arguing Plaintiffs' negligence claims against the individual Officers are barred by the public duty doctrine. Additionally, now that the City of Pullman Police Department has been dismissed from this action, Defendants request the Court dismiss the negligence claims against the Pullman Police Department, which are based on the doctrine of respondeat superior. *See* Amended Complaint, ¶ 6.4.

### 1. **City of Pullman Police Department**

Plaintiffs argue the City of Pullman is still a proper defendant for Plaintiffs' state law causes of action because the Court's Order Granting Defendants' Motion for Judgment on the Pleadings (Ct. Rec. 426) only dismissed the City of Pullman Police Department, not the City of Pullman. However, the City of Pullman is not a named party in this action. Plaintiffs correctly note that when the *Logan* and *Arnold*

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 4

cases were consolidated, the Court's Order indicated that the City of Pullman was a proper remaining defendant.  At that time, the Court's statement was true because although the *Arnold* complaint did not name the City of Pullman as a defendant, the *Logan* complaint did name both the City of Pullman and the City of Pullman Police Department as defendants.  However, Plaintiffs later sought and obtained permission to file an Amended Complaint in this consolidated action.  Plaintiffs' Amended Complaint (Ct. Rec. 137) does not name the City of Pullman. Rather, the Amended Complaint only names the "City of Pullman Police Department; William T. Weatherly; Dan Hargraves; Ruben Harris; Don Heroff; and Andrew Wilson."  Consequently, the City of Pullman was terminated as a party defendant in this case.

An "amended complaint supersedes the original, the latter being treated thereafter as being non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997).  Because the City of Pullman was not named in Plaintiffs' Amended Complaint, the City of Pullman is not a party in this action.  Accordingly, since the Pullman Police Department has been dismissed from this action, the only remaining negligence claims include Plaintiffs' claims against the individual Defendant Officers.

### 2. **Public Duty Doctrine**

"Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general

(i.e., a duty to all is a duty to no one)." *Taylor v. Stevens County*, 111 Wash.2d 159, 163, 759 P.2d 447 (1988). Defendants argue summary judgment should be granted on Plaintiffs' negligence claims because Plaintiffs failed to establish whether the Officers owed any duty of care to each of the individual Plaintiffs under their multiple negligence theories. In response, Plaintiffs argue Defendants should be prohibited from seeking summary judgment under the public duty doctrine because Defendants never specifically raised this issue in their original motion for summary judgment. Alternatively, Plaintiffs argue the public duty doctrine is not applicable to the facts of this case.

Although Defendants did not specifically address the issue of the public duty doctrine in their original motion for summary judgment, they did argue Plaintiffs had failed to establish that the Defendant Officers owed any specific duty to Plaintiffs. In its Order, the Court concluded the Defendants had withdrawn their motion for summary judgment with respect to Plaintiffs' negligence claims because Defendants did not mention it in their reply brief. However, Defendants contend they didn't address the issue in their reply brief because Plaintiffs failed to meet their burden of proving the existence of a duty. Defendants now state they "regret not better explaining this position" but urge the Court to consider the issue now on Defendants' motion for reconsideration.

The Court recognizes that its Order never specifically addressed what "duty" the Officers owed the Plaintiffs. Since the first hurdle

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 6

in any negligence action is establishing a duty[,]" *Bratton v. Welp*, 145 Wash.2d 572, 576, 39 P.2d 959 (2002), prior to trial the Court will necessarily have to make a determination as to the applicability of the public duty doctrine.  Therefore, the Court concludes it is appropriate and necessary to reconsider its Order and determine to what extent Plaintiffs' negligence claims are affected by the public duty doctrine.

"The existence of a duty is a question of law, not fact.  *Minahan v. W. Wash. Fair. Ass'n*, 117 Wash.App. 881, 890, 73 P.3d 1019, 1024 (Div. 2, 2003); *Pedroza v. Bryant*, 101 Wash.2d 226, 228, 677 P.2d 166 (1984).  A duty can arise either from common law principles or from a statute or regulation.  *Doss v. ITT Rayonier, Inc.*, 60 Wash.App. 125, 129, 803 P.2d 4, *rev. denied*, 116 Wash.2d 1034, 813 P.2d 583 (1991).  The public duty doctrine serves as a "framework" for courts to use when determining when a public official owes a specific statutory or common law duty to a plaintiff suing in negligence.  *Cummins v. Lewis County*, 133 P.3d 458, 462 (2006).  "Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e*, a duty to all is a duty to no one)."  *Taylor v. Stevens County*, 111 Wash.2d 159, 163, 759 P.2d 447, 449-450 (1988)(citation and internal quotations omitted).  "There are four common law exceptions to the public duty doctrine  If one of these exceptions applies, the [public official] will be held as a

matter of law to owe a duty to the individual plaintiff or to a limited class of plaintiffs." *Cummins*, 133 P.3d at 462 (internal quotations and citations omitted). "The exceptions are (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Id.* at n. 7.

Here, Plaintiffs do not argue that an exception to the public doctrine applies. Rather, Plaintiffs argue the public duty doctrine is inapplicable to cases, such as this, where the negligence flows from "actions as opposed to inactions." *See Coffel v. Clallam*, 47 Wash. App. 397, 403, 735 P.2d 686, 690 (Div. 2, 1987). ("The [public duty] doctrine provides only that an individual has no cause of action against law enforcement officials for failure to act. Certainly if the officers do act, they have a duty to act with reasonable care."). Thus, Plaintiffs argue that once the Officers decided to break up the altercation at the Top of China Restaurant and The Attic nightclub by taking affirmative action and discharging O.C. spray, the Defendant Officers had a duty to act with reasonable care.

In *Coffel*, the owner (Mr. Coffel) and the tenant (Mr. Knodel) of a commercial building brought suit against various county police officers for failure of law enforcement to take action to prevent the destruction of the building by Clinton Caldwell, a former owner of a one-half interest in the building. *Coffel*, 47 Wash.App. at 398, 735 P.2d 686. The gist of the plaintiffs' claims was that the defendant officers stood by while the plaintiffs' building and contents were being destroyed by Mr. Caldwell and prevented plaintiffs from doing

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 8

anything about the destruction even though the officers knew of plaintiff Coffel's claim of ownership and plaintiff Knodel's claim of possession. *Coffel v. Clallam County*, 58 Wash.App. 517, 519, 794 P.2d 513 (Div. 2, 1990). The gist of the defense was that since there was a civil dispute over ownership of the building, the officers were under no duty to intervene and that, in any event, the public duty doctrine shielded them from liability for their actions or failure to act. *Id.* The court of appeals held that plaintiffs had stated a cause of action for negligence by alleging the officers at the scene acted affirmatively in preventing plaintiffs from protecting their property against destruction. *Coffel*, 47 Wash.App. at 403-04, 735 P.2d 686. However, the court of appeals dismissed the negligence claims against the officers who were present at the scene insofar as they were based on "inaction" of the officers. *Id.* The court remanded to the trial court for a determination of "whether affirmative action was taken by [the] officers, and whether any action taken was below the standard of reasonable care and whether such action proximately resulted in damage to plaintiffs for which defendants are liable." *Id.* at 405, 735 P.2d 686.

Under *Coffel*, Plaintiffs' claim that the Individual Defendant Officers were negligent in dispersing O.C. spray inside the building is not precluded by the public duty doctrine. However, the public duty doctrine is still applicable to the remainder of Plaintiffs' negligence theories which are based on allegations that the Officers "failed" to act in some way. *See* Plaintiffs' Amended Complaint, at ¶¶

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 9

6.4.1-.4 (Plaintiffs "failed to communicate knowledge of the social function", "failed to plan and assess their response", "failed to establish physical presence at the scene", "failed to assess the environmental conditions of the confined building before discharging" O.C. spray) and ¶¶ 6.4.6 and 6.4.7. ("failed to provide for safe crowd control following use of" O.C. and "failed to administer medical attention to or call for medical response" for Plaintiffs).  Thus, these theories of negligence are not actionable because Plaintiffs have failed to show any exception to the public duty applies.

### B.   *Doctrine of Transferred Intent*

Defendants also move for reconsideration of the Court's Order, to the extent it holds that the doctrine of transferred intent is applicable to Plaintiffs' assault claims.  In its Order, the Court held that under the doctrine of transferred intent, "the officers' intent with respect to those individuals who were directly sprayed by O.C. transfers to all of the plaintiffs who were inside the building when O.C. was sprayed." Order, at 8.  Defendants argue the doctrine of transferred intent has not been specifically adopted in civil cases in Washington.  In the alternative, Defendants argue that even if the Court concludes the doctrine has been adopted in civil cases in Washington, the doctrine is not applicable the facts in this case.

In holding that the doctrine was applicable to this civil case, the Court's Order cited to *State v. Clinton*, 25 Wash.App. 400, 606 P.2d 1250 (1980), a criminal case wherein the defendant was convicted of second-degree assault.  The defendant taunted a husband to fight

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 10

with him and began swinging a piece of pipe so violently that the pipe left his hand, sailed past the husband and struck the wife.  The court held that an instruction on the doctrine of transferred intent was appropriate and affirmed the defendant's conviction for second-degree assault against the wife.

In contrast to the facts in *Clinton*, Defendants argue the doctrine of transferred intent is not applicable to this case because it is not a "shoot and miss" case.  Instead, this is a case where the Officers' alleged intended victims of the O.C. were actually sprayed with O.C.  In support of their argument, Defendants cite several cases from other jurisdictions wherein courts that have adopted the doctrine of transferred intent have specifically held that it does not apply to the "shoot and hit" scenario.  *See e.g., State v. Ford*, 625 A.2d 984, 997-998 (Md. 1993) (holding that where the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims).  In response, Plaintiffs point to decisions from other jurisdictions wherein courts have held that the doctrine of transferred intent is applicable when a defendant kills an intended victim as well as an unintended victim.  *See e.g., Harvey v. State*, 111 Md.App. 401, 681 A.2d 628 (1996) (the doctrine of transferred intent operates with full force whenever the unintended victim is hit and killed; it makes no difference whether the intended victim is missed; hit and killed; or hit and only wounded); *State v. Fennell*, 340 S.C. 266, 531 S.E.2d 512 (2000); *Ochoa v. State*, 115 Nev. 194, 981

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 11

P.2d 1201, 1205 (1999); *Mordica v. State*, 618 So.2d 301, 303 (Fla.Dist.Ct.App. 1993); and *State v. Worlock*, 117 N.J. 596, 569 A.2d 1314, 1325 (1990).

The Court determines the doctrine of transferred intent is unnecessary to find the Officers assaulted those Plaintiffs who were directly sprayed with O.C. and those Plaintiffs who suffered only secondary effects. The Washington legislature has not defined "assault" and thus Washington courts have turned to the common law for its definition. *State v. Wilson*, 125 Wash.2d, 212, 217, 883 P.2d 320, 323 (1994). "Three definitions of assault are recognized in Washington: (1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting the harm [common law assault]. *Id.* (citing *State v. Bland*, 71 Wash.App. 345, 353, 860 P.2d 1046 (1993)). "Assault by battery does not require specific intent to inflict harm or cause apprehension; rather battery requires intent to do the physical act constituting assault. The other two forms of assault, however, require specific intent that the defendant intended to inflict harm or cause reasonable apprehension of bodily harm." *State v. Hall*, 104 Wash.App. 56, 62, 14 P.3d 884, 887 (Div. 3, 2000) (internal citation omitted). Here, Plaintiffs don't rely on the assault by battery definitions. Rather, Plaintiffs appear to rely on the third common law definition of assault: assault by attempt to

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 12

cause fear and apprehension of injury.  "Assault by attempt to cause fear and apprehension of injury requires specific intent to create reasonable fear and apprehension of bodily injury."  *State v. Eastmond*, 129 Wash.2d 497, 500, 919 P.2d 577, 578 (1996).

"Transferred intend is only required when a criminal statute matches specific intent with a specific victim."  *Wilson*, 125 Wash.2d at 219, 883 P.2d at 324.  For example, the doctrine of transferred intent is unnecessary to convict a defendant of assaulting both his intended victim and his unintended victim in the first degree because once intent to inflict great bodily harm is established, the mens rea is transferred to any unintended victim.  *See* RCW 9A.36.011; *see e.g.*, *Wilson*, 125 Wash.2d at 218, 883 P.2d at 323 ("Assault in the first degree [which involves assault by battery] requires a specific intent [to inflict great bodily harm]; but it does not, under all circumstances, require that the specific intent match a specific victim.").  Similarly, the doctrine of transferred intent is unnecessary to convict a perpetrator of assaulting an unintended victim in the second-degree because that statute, RCW 9A.36.021(1), does not match specific intent with a specific victim.  *See* RCW 9A.36.021; *see e.g., State v. Allen*, 105 Wash.App. 1040, 2001 WL 316177 (Div. 1).  The second degree assault statute, which includes the common law definition of assault, requires that the perpetrator have the intent to create "in another" "apprehension and fear of bodily injury."  RCW 9A.36.021(1).  It also requires that the perpetrator create "in another" a "reasonable apprehension and

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 13

imminent fear of bodily injury." *Id.* However, this offense does not require that the intended person and the person who suffered the assault be the same person. *Id.*

The statutory definitions for criminal assault, which rely on the common law definitions of assault, do not require proof of a specific intent to assault the named victim. *See Wilson*, 125 Wash.2d 212, 883 P.2d 320. In other words, once intent to assault another is established, the *mens rea* is transferred to any unintended victim. *See supra*. Thus, if Plaintiffs prove the Officers intended to assault (*i.e.,* intended to create apprehension and fear of bodily injury) those Plaintiffs who were directly sprayed with O.C., the intent transfers to all Plaintiffs who were assaulted (*i.e.,* intended and unintended victims), even though the Officers may not have intended to assault those Plaintiffs who were not directly sprayed with O.C.

**CONCLUSION**

Upon reconsideration of its Order, the Court determines that the only remaining negligence claims at this stage of the proceedings include Plaintiffs' claims against the individual Defendant Officers. Further, the Court concludes that Plaintiffs' claim that the Officers were negligent in dispersing O.C. spray inside the building is not precluded by the public duty doctrine. Whether the Officers' use of O.C. spray was below the standard of reasonable care and whether such action proximately resulted in damage to Plaintiffs is a question for the jury. However, Plaintiffs' remaining negligence theories are precluded by the public duty doctrine. With respect to Plaintiffs'

assault claims that are not barred by the statute of limitations, the Court concludes the doctrine of transferred intent is unnecessary to find the Officers intended to assault those Plaintiffs who were directly sprayed with O.C., as well as those Plaintiffs who were not directly sprayed but suffered secondary effects.

**IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration Re: Court's Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment Re: Plaintiffs' State Law Claims (**Ct. Rec. 395**) is **DENIED IN PART AND GRANTED IN PART.**

**IT IS SO ORDERED.**   The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this 6th day of June, 2006.

_s/ Fred Van Sickle_
Fred Van Sickle
United States District Judge

ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION RE: COURT'S ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT RE: PLAINTIFFS' STATE LAW CLAIMS - 15